[Ex parte Byrd.]

47 Maine, 28; *Ins. Co. v. Mayor, &c.*, 8 N. Y. 239; *The People v. O'Brien*, 38 N. Y. 193; *Ballentyne v. Wickersham*, 75 Ala. 541; *Mooy v. Randolph*, 77 Ala. 597; *Stein v. Leeper*, 78 Ala. 521; *Morgan v. The State*, 81 Ala. 72; *Rogers v. Torbet*, 58 Ala. 524; *Herr v. Seymour*, 76 Ala. 275; *Ogbourne v. Ogbourne*, 60 Ala. 619.

T. N. McCLELLAN, Attorney-General, and S. W. JOHN, for the State, cited *Wilkinson v. Ketler*, 59 Ala. 306.

# *Ex parte* **Byrd.**

### Application for Writ of Habeas Corpus.

1. *Constitutionality of municipal ordinance regulating sale of certain commodities.*—It is clearly within the legislative power of the State, so far as any limitations resulting from the Federal constition are concerned, to authorize the passage by city councils of ordinances which prohibit the sale of certain commodities, either generally or beyond specified limits, or within certain hours of the day.

2. *Same.*—The delegation to a municipal corporation of the power to establish public markets, and to confine the sale of commodities,

which, in consideration of public health, require police inspection and supervision, to such markets, is clearly within the competency of the General Assembly under the Constitution of Alabama; and this is true, even if a result of the exercise of this power should be the destruction of an existing and long established business.

3. *Same.*—City ordinances regulating sales of commodities, passed under legislative authority, must be consistent with general laws, reasonable in their provisions, and referable to the performance of some recognized governmental function.

4. *Same.*—A city ordiance, like a statute, may be valid in some of its provisions, and invalid as to others. The party assailing the ordinance because of such invalid provision, must show himself to be affected by such provision.

5. *Power to regulate and manage markets; what it comprises.*—The power given in the city charter to "regulate and manage markets," authorized the city council of Mobile to adopt ordinances prohibiting the sale of commodities at stores, stalls and places in the city outside of the market houses. The power to "regulate" confers authority to confine the business referred to to certain hours of the day, to certain localities or buildings in the city, and the manner of its prosecution within those hours, localities and buildings.

R. H. FAITH, for petitioner.—Petitioner is unlawfully deprived of his liberty.—Const. U. S. Art. 14, § 1; 118 U. S. Rep. 356; Const. Ala. Art. 1, §§ 1, 7; Art. 4, § 50. Municipal corporation can not suppress a lawful trade or business. 30 Ala. 461; 32 Ala. 728; *Laundry License Case*, 22 Fed. Rep. 701; 78 Ala. 419; 80 Ala. 579; 33 Ill. 417; 46 Ill. 489; 45 Ill. 90; 28 Ga. 560; 7 Paige, 261; 23 How. 435; 79 Ala. 465; 5 Cranch C. C. 13; 14 U. S. Dig. 226, § 389; 26 Fed. Rep. 611; 29 Fed. Rep. 181; 13 Fed. Rep. 229.

BRAXTON BRAGG, *contra*, cited Act incorporating the city of Mobile, approved Dec. 10, 1886, §§ 20, 21; 2 Black. Com. 37; 10 Ohio, 257; 1 Dill. Munic. Corp. §§ 313, 317; Tiedeman's Pol. Pow. § 104; Horr. & Bemiss Munic. Pol. Ord. 205; 8 Johnson, 418; 10 Wend. 100; 2 La. 219; 25 Mo. 37; 44 Mo. 547; 21 Am. Rep. 563; 1 Am. Rep. 547; *Slaughter House Cases*, 16 Wall.

STONE, C. J.—The petitioner was convicted by the mayor of Mobile for a violation of a municipal ordinance entitled an "ordinance to establish and regulate markets." Failing to pay the fine imposed, he was committed to prison, and thereupon he applied to the judge of the City Court for a writ of *habeas corpus* on the ground of the invalidity of said ordinance. This application was denied, and he renews it here.

The ordinance in question provides, among other things, for the establishment and regulation of markets at several

[Ex parte Byrd.]

points in the city of Mobile, and prohibits the sale of fresh meats at retail outside of these markets, except by tenants of the market stalls, who are permitted to hawk about the streets, after "8 o'clock A. M. of the day." This ordinance was in effect on May 1, 1888. The petitioner was then, and had been for a number of years, a green grocer in Mobile, and as such was engaged in the business of selling fresh meats from his store, having regularly up to May 1, 1888, paid the municipal license tax imposed on that business; and having offered to continue the payment of this tax. It was admitted that the meats sold by petitioner were sound and wholesome, and that his store was fitted up for this business, and was and had always been clean and neat. Petitioner, on May 1, 1888, between seven and eight o'clock A. M., sold meat at his store in violation of this ordinance. For this he was convicted, and his conviction was assailed below, and its validity is attacked here, on the ground that said ordinance is void because (1) it is violative of section 1, Art. XIV of the Constitution of the United States; (2) it is violative of sections 1 and 7 of Art. 1 and section 50 of Art. IV of Constitution of Alabama, and (3) that its enactment was not authorized by the charter of the city (or port) of Mobile.

Upon the case, as thus presented, our conclusions are: 1. That it is clearly within the legislative power of the State, so far as any limitations resulting from the Federal constitution are concerned, to authorize the passage by city councils of ordinances which prohibit the sale of certain commodities, either generally, or beyond specified limits, or within certain hours of the day. Indeed, the recent adjudications of the Supreme Court of the United States fully recognize the doctrine that the Federal constitution can not be successfully invoked in limitation of the State's absolute control, either directly or through its political instrumentalities, of its internal police affairs. Both the necessity for police regulation, in a given instance, and the adaptation of a particular regulation to the specific end in view, are matters entirely of State cognizance and final determination. This ordinance, therefore, as applied to the agreed facts, is not violative of any provision of the national constitution. *Mugler v. Kansas*, 123 U. S. 623. The *Oleomargarine Case* (not reported).

2. The delegation to a municipal corporation of the power to establish public markets, and to confine the sale of commodities, which, in consideration of public health, require

police inspection and supervision, to such markets, is clearly within the competency of the General Assembly, under the constitution of Alabama, and it is not conceived that any right secured by the organic law would be impaired by the exercise of this power, even if one of the results of its exercise should be the destruction of an existing and long established business. Such ordinances, however, must not be inconsistent with general laws, they must be reasonable in their provisions, and referable to the performance of some recognized governmental function.

Deferring, for the present, the inquiry whether the charter of Mobile confers power on the city government to prohibit the sale of meats at any store or stall outside of the market buildings, the question arises, has the petitioner shown that he is affected by any other provision in the ordinance? It is not shown that he has peddled, or desires to peddle about the streets. An ordinance, like a statute, may be valid in some of its provisions, and invalid as to others.—*Vines v. State*, 67 Ala. 73; *Powell v. State*, 69 Ala. 10; *McCreary v. State*, 73 Ala. 480. It is not our purpose to inquire into the validity of the clause which discriminates, in the matter of peddling on the streets, between tenants of stalls and those who are not. If this does vitiate the ordinance to any extent, it is only to the extent of avoiding this exception or giving to all persons the benefit of it, and allowing others as well as lessees of stalls the privilege of peddling about the streets.

3. This leaves but one inquiry for our consideration; whether the charter power to "regulate and manage markets" authorized the city council of Mobile to adopt ordinances prohibiting the sale of commodities at stores, stalls and places in the city outside of the market houses. While the power "to regulate" does not authorize prohibition in a general sense, "for the very essence of regulation is the existence of something to be regulated," yet the weight of authority is to the effect, that this power confers the authority to confine the business referred to to certain hours of the day, to certain localities or buildings in a city, and to the manner of its prosecution within those hours, localities and buildings.—Horr & Bemis Mun. Police Ordinances, 32; *Cronin v. People*, 82 N. Y. 318; *Livery Stables v. State*, 16 Mo. App. 131; *In re Wilson*, 32 Minn. 145.

The ordinance here brought in question is not a prohibition of petitioner's business. It does not deny his right to

[Ex parte Mayor and City Council of Anniston in re Ballew.]

prosecute it. Its only effect upon that business is to confine it to the public markets, to limit its prosecution to certain hours of the day, and to prescribe rules for its conduct in conservation of public health.

The conviction of the petitioner was not void, his imprisonment thereunder is legal, and the writ of *habeas corpus* is denied.