### 1813.   CAMPBELL *v.* CITY OF THOMASVILLE.

### 1820.   JONES *v.* MAYOR & COUNCIL OF WAYCROSS.

1. The Court of Appeals has jurisdiction to determine the constitutionality of a municipal ordinance.

2. "Near beer" is a term of common currency, used to designate all that class of malt liquors which contain so little alcohol that they will not produce intoxication, though drunk to excess; and includes in its meaning all malt liquors which are not within the purview of the general prohibition law.

3. Since the General Assembly, by the "near beer" tax act of 1908 (Acts 1908, p. 1112), has by implication expressed the general policy of permitting the sale of "near beer" by those who pay the tax, the municipalities may not, in the absence of express charter authority, prohibit its sale entirely. They may, however, under the usual general welfare clause, enact reasonable regulations governing its sale.

4. The selling of "near beer" is a business which, from its very nature, admits of strict regulation under the police power. It stands legitimately in a different class from the business of selling drugs, soda water, and similar liquids. Regulations may be upheld as applied to this occupation which would be arbitrary and unreasonable if there were an attempt to apply them to other businesses.

5. Any fair and apposite regulation designed to confine the business of selling "near beer" to persons of good character is reasonable.

(a) In order that the municipal governing body may have an opportunity to pass upon the character of the applicant, they may require the making of a written application, and the granting of a permit or license thereon, as a condition precedent to one's engaging in the business.

6. The business of selling "near beer" may be confined to reasonable territorial limits within the municipality. The limits, however, should be fairly extensive, and not arbitrarily narrowed.

(a) The municipal governing body may legitimately refuse to grant a permit to sell at a place within the designated limits, where, for some special reason, it should appear that the sale in that particular place or building would be subversive of those objects which municipal government is designed to protect.

(b) The limits prescribed by the ordinance of the City of Waycross are, under all the facts appearing in the record, unreasonable.

(c) The ordinance just referred to was manifestly designed, not to regulate the sale of "near beer," but to prohibit it absolutely under the guise of regulation.

7. It is a reasonable regulation that every one who engages in the selling of "near beer" in a municipality shall give a good and solvent bond, conditioned that he will keep an orderly house, will not violate the State liquor laws, and will obey the municipal ordinances of the city, regulating the business.

(a) A provision that the only acceptable surety on the bond shall be a guaranty company is unreasonable.

(b) A provision that the only acceptable sureties on the bond shall be freeholders of the city is unreasonable.

8. Regulations forbidding the proprietors of "near beer" stands from allowing drinking on the premises, also from permitting persons to loiter and idle there, are reasonable. Likewise a regulation forbidding the keeping of chairs, tables, gaming stands, etc., in the room is valid. It may also be required that the "near beer" business shall not be carried on in connection with any other business.

9. A regulation that "near beer" stands shall not be kept open during night hours, or on Sundays, election days, or legal holidays is valid.

10. A regulation prohibiting the keepers of "near beer" stands from having in their places of business screens, shades, stained windows, and other devices for obscuring the view of the interior of the room is valid.

11. A regulation that minors shall not be permitted to enter the place where "near beer" is sold is valid. A provision in a municipal ordi-

nance against selling "near beer" to a minor is unenforceable, as that is an offense against the general law of the State. Sales to females may be prohibited.

12. A regulation forbidding sales of less than a pint of "near beer" is valid; but it is unreasonable to forbid the sale of more than one quart to one person in one day.

13. A provision, in a municipal ordinance regulating the licensing of the business of selling "near beer," that the license shall be forfeited if the holder is convicted of violating the State liquor laws or the ordinances of the municipality, is valid.

14. A municipality may lawfully ordain that all bottles, vessels, barrels, etc., containing "near beer" shall have stamped thereon a designation of their contents, and the name of the manufacturer thereof. It may also require all dealers in "near beer" to submit samples to be tested.

15. An indigent Confederate soldier, duly certified by the ordinary of the county of his residence, being exempt by law from the payment of any municipal license fee required for the sale of "near beer," can not raise the question that the license fee named in an ordinance regulating the sale of "near beer" is excessive. He is not legally interested in the question.

16. Indigent Confederate soldiers who have paid the State tax on the sale of "near beer" are exempt from the payment of municipal license fees imposed upon that business, but they are not exempt from the operation of such other reasonable regulations as the municipality may impose upon those engaging therein.

17. The ordinance enacted by the City of Thomasville regulating the sale of "near beer" is not unconstitutional, as against a person desiring to engage in that occupation, on the ground that it makes an arbitrary classification, or that it denies him the equal and complete protection of the laws, or that it takes his property without due process of law.

18. A municipal ordinance may be void in part and good in part. The void and the good may be so interdependent as to render the whole invalid, or may be so separable as to allow a segregation and to permit of the enforcement of one part while the remainder is nugatory.

(*a*) The unreasonable requirement of the "near beer" ordinance of the City of Thomasville, restricting the nature of the sureties to be taken on the prescribed bond, is not such a vital part of the ordinance and is not so interwoven into the whole legislative scheme as to render the entire ordinance void.

(*b*) One who has been convicted of selling "near beer" in violation of that ordinance, but who has made no application to the city council and has tendered no bond at all, is not in a position to complain of the illegality of the requirement that the sureties on the bond shall be freeholders. This provision being void, the presumption is that if he had tendered a bond otherwise sufficient, the city council would have ignored the void provision and would have accepted the bond.

(*o*) In the "near beer" ordinance of the City of Waycross the void and the good are so interwoven as to indicate an invalid legislative design; and that ordinance must fall entirely.

No. 1813.  Certiorari, from Thomas superior court—Judge Mitchell.  March 1, 1909.

*Theodore Titus,* for plaintiff in error.

*Roddenbery & Luke,* contra.

No. 1820.  Certiorari, from Ware superior court—Judge Parker. March 22, 1909.

*J. L. Sweat, Malcolm D. Jones,* for plaintiff in error

*Wilson, Bennett & Lambdin,* contra.

Argued May 4,—Decided May 18, 1909.

POWELL, J.  These two cases are distinct and separate causes, but will be considered together because of the fact that they both involve the same general questions.  In No. 1813 the plaintiff in error, Campbell, was convicted of violating what is known as the "near beer" ordinance of the City of Thomasville.  He presented a petition for certiorari to the judge of the superior court, who refused to sanction it; and to this judgment he brings error.  The ordinance under which he was convicted is as follows:  "Whereas in the judgment of this council the keeping of 'near beer' or any other imitation of beer, for sale in the city, is in the nature of a nuisance, and certain to become a nuisance unless carried on under proper regulations, and to be or become more injurious to the general welfare of the city: therefore, be it ordained:

"Section 1.  That any person desiring to sell in said city any imitation of beer that is commonly called 'near beer,' or any other imitation of beer, must, before commencing said business, make application to the council, through the clerk thereof, which application must be signed by the party applying for such license and must plainly and fully describe the house in which such business is to be carried on, the location by street and number; and the applicant must agree and bind himself thereby to keep a decent and orderly house, and that there shall be no screens or partitions or other devices of any kind by which any one passing along the front of said place of business will be prevented from having a full, free, and unobstructed view of the entire interior of said place and every one therein; that there shall be no tables or seats therein for the use of customers; that no person or persons shall be allowed to loiter or loaf in said place of business; that minors shall not be allowed in said place of business; that said place of business shall not be opened at all on Sundays, nor before 6 o'clock in the morning, nor·

after 7 o'clock in the evening, and that between said hours of 7 p. m. and 6 a. m. no one shall be allowed to enter said place or remain therein after the time of closing; that said application having been duly made and filed, the applicant shall file a bond with two good securities, freeholders of said city, in the penal sum of $3,000, conditioned for the faithful performance of all conditions of the application, and the payment of any fine or fines that may be imposed by the mayor, or acting mayor, for a failure to comply with all the agreements or any of them in said application contained. If said application and bond are approved by council and the clerk authorized to issue a license to said applicant, the clerk shall not issue any license to such person until the said party presents a receipt from the treasurer for the sum of $1,000, paid as a license for the time between the date of said receipt and the first day of the next March.

"Section 2. That any person who has obtained a license by complying with all the requirements of the preceding section, and who shall thereafter fail to comply with the terms of said application, by failing to keep out of said place of business any and all screens, partitions, or other things that prevent or tend to prevent a full, free, and unobstructed view of the entire room or rooms in which such business is carried on, or that has in said place of business tables or seats for the convenience of customers, or that allows minors in said place of business, or that allows persons to loiter or loaf in said place of business, or that opens before the time specified, to wit 6 o'clock a. m., or that fails to close said place on the stroke of 7 o'clock p. m., or that conducts said place of business in such a way as to annoy or disturb the neighbors, shall be deemed guilty of violating this ordinance, and on conviction thereof shall be punished as provided in the general Penal Code, section 1, and his license shall be revoked also, and he and the securities on his bond shall be liable for any fine imposed for any such violation of this ordinance.

"Section 3. That the application above described must be signed by any party desiring or intending to engage in the business of selling 'near beer' or any other imitation of beer, and all the rules and requirements and punishments in the foregoing sections shall apply to every person carrying on said business in this city, regardless of any exemption by law or otherwise that may be claimed

by any party from the payment of a license fee. Any person claiming an exemption from such payment, by reason of his service as a Confederate soldier, must produce his certificate from the ordinary of the county of his residence, and must show that he is personally in charge of and running said business, and owns the same in his own right; otherwise the marshal shall close said place at once. Any such exemption from payment of license shall be construed to authorize the party holding same to run only one stand or place of business in this city.

"Section 4. Any person engaged in running a place where 'near beer' or any imitation of beer is sold shall be required to furnish the city with the sample of every brand or kind of such imitation of 'near beer' sold by him, whenever requested to do so by the marshal, for the purpose of having the same tested by the proper authorities as to the amount of alcohol therein, and a refusal to furnish such samples on request shall be deemed prima facie proof that such person is selling or keeping for sale at his place of business intoxicating liquors, and subject him to all the penalties for keeping for sale intoxicating liquors, prescribed by the city or the State."

Under the charter of the City of Thomasville (Acts 1889, p. 854), offenders may be brought to trial before the police court upon a summons "setting out in a plain summary way the nature of the offense charged." The summons in the present case charged Campbell with "the offense of selling an imitation beer commonly called 'near beer,' in the City of Thomasville, Ga., without complying with the regulations for the sale of same, as prescribed in the 'near beer' ordinance of said city." The defendant, upon arraignment in the police court, demurred to the summons, on the ground that it was too vague, indefinite, and uncertain to put him on notice as to what was charged against him. The demurrer elaborates this ground, but we do not deem it necessary to go into the details of these objections, as we think the summons sufficiently complies with the requirements of the charter that it shall set out the nature of the offense "in a plain summary way."

The defendant, by his demurrer, also attacked the ordinance in question as follows: "Defendant says that said ordinance as it is written is void in its entirety, for the reason that it shows upon its face that it is not an attempt by the municipal authorities,

by way of police regulations, to regulate and reasonably restrict or govern dealers in 'near beer:' but that, on the contrary, the said ordinance shows on its face that it is arbitrary and unreasonable, and intended by said city to be vexatious, and for the purpose of driving persons engaged in the 'near beer' business in said city, under a license from the State of Georgia, out of said city, and destroying and depriving them of their right, given by law, to conduct said business, same being a property right.

"For further ground of demurrer, defendant says that said ordinance is void, and incapable of enforcement as to any provisions thereof, because it is apparent from the general scheme of the ordinance that the same was intended to be enforced as a whole, and it was not the intention of the makers thereof that any particular portion of said ordinance should be enforced; and further, said ordinance shows that it is incapable of enforcement except in its entirety, for the reason that an attempt to enforce a part only of it would cause the entire legislative scheme to fail.

"For further ground of demurrer, defendant says that said ordinance is void because it violates paragraph 1, section 4, of article 1 of the constitution of Georgia, in that it is a local law and in direct conflict with section 1642 of the code of 1895, and the Acts of the Legislature of 1897, p. 24, amendatory to said code section, conferring upon Confederate soldiers the right to peddle or carry on business in any city in Georgia, in that said ordinance, by reason of its unreasonableness, is destructive and prohibitive of the right so conferred upon Confederate soldiers by the general law, to conduct business without giving bond, the said ordinance making no exceptions as to them.

"For further ground of demurrer, defendant says that said ordinance is void because, as it is written, it is conflicting with the general law of Georgia, approved September 5, 1908 (Acts of 1908, p. 1112), same being an act to provide a revenue for development and conduct of the penitentiary system of the State, etc.; because, by reason of its arbitrariness and unreasonableness, it renders it impossible for any person, after having paid the State of Georgia the license tax of $200, as contemplated by said act, to conduct the business authorized by said license from the State, in said City of Thomasville, by requiring a license which is prohibitory, and a $3,000 bond, which is likewise prohibitory; and for this

reason it is violative of the provisions of the constitution aforesaid, and therefore unconstitutional, and for this reason is also void, because, as it is written, it is contrary to the public policy of the State of Georgia, as outlined in said act referred to.

"For further ground of demurrer, defendant says that said ordinance is unconstitutional and void because it violates paragraph 2, section 1, article 1 of the constitution of Georgia, in that it denies to persons engaged in the 'near beer' business in said city impartial and complete protection of their persons and property, guaranteed by the constitution, for the reason that it arbitrarily taxes one class of dealers in non-intoxicating malt liquors, and undertakes to classify them, and to impose upon them restrictions and regulations and licenses, without placing any restrictions and regulations and licenses upon any other class of dealers in non-intoxicating malt liquors in said city, such as licensed druggists; and for the further reason that the requirements of said ordinance are such as to totally destroy and impair the property right of such dealers in said business, acquired by the payment of the license tax to the State of Georgia.

"For further ground of demurrer, defendant says said ordinance is null and void because in conflict with article 1, section 1, paragraph 3, of the constitution of Georgia, and is likewise in conflict with the 14th amendment of the constitution of the United States (Civil Code, § 6030), because it deprives the defendant of his property, without due process of law, and denies him the equal protection of the law, because the provision in said ordinance requiring the defendant to make bond in the penal sum of $3,000, conditioned to pay any fine that might be assessed against him, which bond must be signed by two good securities, freeholders of said city, and the additional requirement that he pay a license fee of $1,000, are absolutely prohibitive and destructive of the defendant's right to carry on the business authorized by the State of Georgia, in consideration of the license tax of $200, and because, the business of dealing in 'near beer' being authorized and licensed by the State of Georgia, solely on the idea that the beverage is not an intoxicant, the said ordinance, arbitrarily taxing such dealers, and segregating them and classifying them and their business, and imposing upon it unreasonable restrictions and regulations and prohibitions, without putting any such regulations and restrictions upon persons

carrying on any other business in said city, and especially in distinguishing 'near beer' dealers from all other dealers in non-intoxicating malt liquors, is denying to the defendant the equal protection of the laws."

Upon the trial it appeared, that the defendant had paid the State tax on dealers in imitation or "near beer:" also that he was an indigent Confederate soldier and possessed the certificate of the ordinary of the county of his residence, upon which he was entitled to the benefit of the statute exempting indigent soldiers from the payment of certain occupation taxes. It was proved that he had sold "near beer" without complying with the requirements of the ordinance. No point is made upon the adequacy of the evidence. The only grounds of error are that the conviction is contrary to law, for the lack of a legal ordinance, and that the mayor presiding in the police court erred in overruling the demurrer.

In No. 1820 the plaintiff in error, Jones, was convicted in the police court of Waycross, for the violation of what is called the "near beer" ordinance of that city. He also excepted to the fact that the judge of the superior court refused to sanction a certiorari. Upon arraignment in the police court, the defendant filed pleading which he designated as an answer, and which presents his attack upon the ordinance, as follows: "Defendant admits having violated 'an ordinance to license and regulate the sale of "near beer" and similar beverages within the corporate limits of the city of Waycross, and for other purposes,' adopted March 3, 1909, a certified copy of which is hereto attached, by engaging in the sale at retail, in store number 17 Albany avenue in said city, of a non-intoxicating beverage manufactured by the Acme Brewing Company, of Macon, Georgia, and of a similar non-intoxicating beverage manufactured by the Savannah Brewing Company, of Savannah, Ga., with the name of each company plainly stamped on the bottles containing same respectively, commonly known as 'near beer,' contrary to the provisions of said ordinance; but defendant says that he should not be adjudged guilty and punished as prescribed in said ordinance, because the same is illegal, invalid, and contrary to the law of the State.

"2. Defendant further says, that if said ordinance shall be deemed valid and binding, he should not be adjudged guilty and punished as prescribed therein, because on February 26, 1909, he

paid to the ordinary of Ware county, in which said City of Way-cross is located, the sum $200, the amount of the State license tax required for the sale of 'near beer,' obtaining his receipt or license therefor, and thereupon rented said store number 17 on Albany avenue in said city, fronting on the court-house square and one of the business streets of said city, for one year at the monthly rental of $10, paying to the owner the rent for the month of March 1909, and, on the first day of said month and prior to the adoption of said ordinance, engaged in the business of selling at retail said 'near beer;' and, as defendant holds a license duly issued to him as a Confederate soldier by Warren Lott, ordinary of said county of Ware, dated October 21, 1899, he is exempt from the payment of any license tax to said City of Waycross.

"3. Further answering, defendant says that said ordinance is illegal because its terms and conditions are unreasonable and can not be complied with, and hence it is prohibitive of a lawful business being engaged in within said City of Waycross, in that it limits and restricts the carrying on of said business only upon that portion of one of the business streets of said city, known as Plant avenue, between Gordon street and Frances street, where a store can not be rented for that purpose, and furthermore requires the written consent of all the owners and occupants of stores, shops, residences, and other buildings within a radius of one hundred yards of the place where said business is to be conducted, which can not be obtained, and fixes the license fee therefor at the unreasonable sum of $1,000 per annum for all others than Confederate soldiers, and requires of every one engaged in said business, including Confederate soldiers, to give a bond, with a reliable guaranty company as surety, in the unreasonable sum of $5,000, which defendant can not give, as the agents for all such companies doing business in Waycross refuse to make the same; and moreover, it limits the quantity of said 'near beer' to be sold by any one person in any one day to not more than one quart, and prevents the carrying on of said business except between the hours of 8 o'clock a. m. and 5 o'clock p. m., the same being an unreasonable restriction, as said business could be made most profitable between the hours of 5 o'clock p. m. and 10 o'clock p, m., and as it also prevents the drinking of said 'near beer' in the building or on the premises where such business is located, which is necessary,

as the retail dealer is expected to open same and furnish glasses for the purpose, and return the empty bottles to the manufacturer, and as it also prevents any person lingering in or about such place of business or on the premises for any length of time whatever, and prohibits the sale of cigars or any other thing at such place of business.. "For all of which said reasons defendant says he should not be adjudged guilty and punished as prescribed in said ordinance. Wherefore, having fully answered, defendant prays to be hence discharged."

As an exhibit, the ordinance is set out as follows:

"Section 1. Be it ordained by the mayor and council of the City of Waycross, and it is hereby ordained by authority of the same, that from and after the passage of this ordinance it shall not be lawful for any person, firm, or corporation to sell, or offer for sale, or to have on hand for the purpose of sale, any preparation or beverage known as 'near beer," or 'Bud,' or 'Malt Mead,' or 'Acme Brew,' or 'Red Buck Ale,' or similar drinks or beverages or substitutes, within the corporate limits of the City of Waycross, unless such person, firm, or corporation shall comply with the following condition, namely: 1st. An application in writing shall be made to the mayor and council for a license, and such application shall state the place where said 'near beer' or similar beverages will be sold, which application must have endorsed thereon the written consent of *all* [italics ours] the owners and occupants of stores, shops, residences, and other buildings within a radius of one hundred yards of the place where said business is to be conducted, and same shall be granted only by a majority vote of council. The provisions of this section, as to securing the written consent of the parties named therein, shall also apply to those persons who may be exempted by law from having to secure license from municipal authorities in order to engage in such business, and such persons shall be required before opening up or carrying on such business, to secure such written consent. 2d. The amount to be paid by the applicant for such license shall be $1,000. per annum, payable in advance. 3d. No person, firm, or corporation shall be allowed to sell such 'near beer,' or similar beverages, except on the following street, to wit: On Plant avenue, between Gordon street and Frances street. 4th. Every applicant for such license, and any other person or persons engaging in said business who may be by law authorized

to do so without a license from the municipal authorities of said city, shall be required to give a good and sufficient bond, with a reliable guaranty company as surety, to be approved by said mayor and council, and payable to said municipal corporation, in the sum of $5,000, conditioned to keep a clean and orderly house and place of business and to comply with all the rules, regulations, and requirements adopted by said mayor and council, or that may hereafter be adopted by them, touching the conduct of such business and regulating the sale of such 'near beer' or other beverages.

"Section 2. Be it further ordained, that it shall not be lawful for any person, firm, or corporation to sell to any one person, on any one day, more than one quart of such 'near beer' or other beverage, and the quantity sold to any one person at any one time shall not be less than one pint; nor shall same be sold to minors or females.

"Section 3. Be it further ordained, that no 'near beer' or other similar beverages shall be drunk in the building or on the premises where such business is located, and it shall not be lawful for any person, firm, or corporation selling 'near beer' or other similar beverage to sell same or keep open their place of business, except between the hours of 8 o'clock a. m. and 5 o'clock p. m. Said places of business shall be closed on Sundays, public holidays, and election days, and such other days as the mayor and council may direct.

"Section 4. Be it further ordained, that it shall not be lawful for any kind of table, stand, cards, games, machines, board, billiard table, or pool table, or any other device or implement for playing any game, to be allowed or kept in the building or on the premises where said business shall be located.

"Section 5. Be it further ordained, that it shall not be lawful for any place of business, where said 'near beer'or similar beverage is sold, to be provided with screens or shades, or for the front doors ·or windows to be painted or frosted over, or otherwise darkened or obscured, but the interior of such place of business shall always be kept in open view of the street in front.

"Section 6. Be it further ordained, that it shall not be lawful for any person, firm, or corporation doing such business to allow any person or persons to linger or loiter in or about such place ·of business, or on the premises on which same is located; and like-

wise any person failing or refusing to leave said place of business or premises shall be punished as hereinafter provided.

"Section 7. Be it further ordained, that it shall be unlawful for any person, firm, or corporation to sell or offer for sale anything or any other article of merchandise except such 'near beer' or similar beverage at the place of business where same is sold, or to carry on or conduct any other business, vocation, or calling at such place.

"Section 8. Be it further ordained, that it shall not be lawful for any person, firm, or corporation as aforesaid to keep on hand, or to allow or suffer any other person, firm, or corporation to keep or store at such place of business, or on the premises connected therewith, any other kinds of beer, wines, or liquors, or to allow or suffer any person to drink any kinds of beers, wines, or malt, spirituous, or intoxicating liquors at such place of business or on the premises where same is located.

"Section 9. Be it further ordained, that any person, firm, or corporation selling 'near beer' or other similar beverage in kegs, bottles, or otherwise shall have the kegs or other vessels so stamped as to show the name of the manufacturer of such 'near beer' or similar beverage.

"Section 10. Be it further ordained, that it shall be unlawful for any person, firm, or corporation, their agents or employees, to take or keep intoxicating liquors on deposit in soft drink or 'near beer' stands. Persons holding such licenses or carrying on such business shall not receive or retain at such places intoxicating liquor or beer on deposit or to be kept there until called for, or allow same to be left with them for any purpose, or allow people to drink beer or whisky so left at their places or brought to their places; and it shall likewise be unlawful for any person, firm, or corporation, their agents or .employees, to receive intoxicating liquors or beer where the same is left with them on a claim that it is deposited for the time being and will be called for afterwards.

"Section 11. Be it further ordained, that any person, firm, or corporation violating any of the provisions of this ordinance shall, on conviction, for each offense be punished as provided by section 23 of the charter of this city, and on conviction of any person, firm, or corporation holding a license to sell 'near beer' or other similar beverages as above provided for, such license shall be ipso

facto revoked, and it shall thereafter be unlawful to sell or furnish 'near beer' or other beverage at such place of business; and any person, firm, or corporation so offending shall likewise, on conviction, be punished as provided by section 23 of the charter of this city.

"Section 12. Be it further ordained, that each and every provision of this ordinance, except alone the provision requiring the payment of $1,000 license fee, shall apply to all persons who may by law be not subject to the license tax imposed upon the sale of 'near beer' and similar beverages, as well as to other persons, firms, and corporations selling 'near beer' or other similar beverages within the corporate limits of this city."

Further facts necessary to an understanding of the points decided will be stated in the course of the opinion.

1. As a preliminary proposition we will dispose of the suggestion that this court should certify to the Supreme Court the questions growing out of the constitutional attacks made upon the ordinances. The constitutional amendment creating this court and separating its jurisdiction from the Supreme Court provides, that "where, in a case pending in the Court of Appeals, a question is raised as to the construction of a provision of the constitution of this State or of the United States, or as to the constitutionality of an act of the General Assembly of this State, and a decision of the question is necessary to the determination of the case, the Court of Appeals shall so certify to the Supreme Court," etc. Ga. Laws, 1906, p. 26; 1 *Ga. App.* viii. It will be seen that as to enactments, laws, ordinances, rules and regulations, etc., other than acts of the General Assembly of this State, the Court of Appeals has the jurisdiction to determine their constitutionality; and it is not necessary to certify such questions to the Supreme Court, unless they also involve the construction of some provision of the constitution of this State or of the United States. *Wright* v. *Macon,* 5 *Ga. App.* 750 (64 S. E. 807).

2. Also, at the beginning of the opinion, we may as well introduce to bench and bar this new recruit in the ranks of that army of subjects which are wont to trouble the courts, "near beer," and give its name a place in the roll of judicial definitions. "Near beer" is a term now of general currency in this State, and perhaps elsewhere, used to designate any and all of that class of malt liquors

which contain so little alcohol that they will not produce intoxica-
tion, even though drunk to excess. It includes all malt liquors
which are not within the purview of the general prohibition law.

3.   There would be but little difficulty in convincing any one
who is familiar with the general purport of the decisions, State
and Federal, which have been rendered concerning that subtle
and apparently undefinable essence of local sovereignty which is
called the police power, that, as a general proposition, uninflu-
enced by any inconsistent legislative declarations, a municipal
government would have the power, under the usual general wel-
fare clause, even to prohibit the sale of "near beer" and of imi-
tations and substitutes for beer and other intoxicating liquors.
However, in this State we must approach the subject with the
fact in mind that the General Assembly, at its last session, placed
a license tax upon the sale of these very things. In what is
known as the "locker-club tax case," *Wright* v. *Macon,* supra,
this court (with expressions of personal reluctance on the part
of the judges, it is true, yet with due alacrity of obedience to
the precedent of the case of *Miller* v. *Shropshire, 124 Ga.* 829
(59 S. E. 335)), held that the placing by the State of an occupa-
tion tax or license fee upon a particular business evinced such a
legislative policy as to forbid a municipality, in the absence of an
express delegation of authority, from prohibiting that business or
occupation. To be valid, therefore, an ordinance adopted by a
municipality to which no express authority on the subject has
been delegated must, as regards the business of selling "near
beer" and other imitations of and substitutes for intoxicating
liquors, stop short of actual or substantial prohibition.

4.   That the municipalities may reasonably regulate the sale
of these non-intoxicating  liquors seems to us to be perfectly
clear. A case closely in point is that of Monroe *v.* City of Law-
rence, 44 Kan. 607 (24 Pac. 1113, 10 L. R. A. 520). The ordi-
nance in that case provided that no person should sell or give
away cider in less quantities than one gallon, or permit the same
to be drunk on the premises. The point presented and decided
will be plainly seen from the following quotation from the un-
animous opinion of the court: "The appellant contends that
cider is a harmless and wholesome drink, and that the restriction
upon its sale is unreasonable, an unlawful restraint of trade, in

contravention of a common right, and is, therefore, unconstitutional. The ordinance was manifestly not enacted in pursuance of the prohibitory law, nor for the regulation of the sale of intoxicating liquors. The ordinance inferentially permits the sale of cider in quantities of a gallon or more, and the penalty for its violation may be $10, without imprisonment. These provisions are not consonant with the law prohibiting and punishing the unlawful sale of intoxicating liquors, and hence we must infer that the ordinance was passed for the purpose of controlling the sale and disposition of cider that was not intoxicating. It will be observed that the ordinance regulates, rather than prohibits the sale of cider; and the legislative power to regulate the sale of an article or liquid which in some stages is harmless and in others hurtful is no longer open to question. The juice of apples quickly changes from fresh to hard cider, and hard cider is presumptively not only a fermented but an intoxicating liquor. State v. Schaeffer, 44 Kan. 90 (24 Pac. 92). It is difficult to show when the change occurs, and when it reaches such a stage as will produce intoxication. It may have been thought that the drinking of cider might foster a taste for strong liquors, and that if the unrestricted sale of cider by the glass were permitted, the officers might be easily deceived as to the character of the drinks sold, and that a tippling-shop might be carried on under the guise of a place to sell cider. In the interest of the health of the people and the peace and good order of the community, it was deemed wise to regulate the traffic. To sell it by the glass, and allow it to be drunk upon the premises where sold, was deemed to be subversive of good order, and dangerous to the health and morals of the people, and hence the city imposed a regulation that it should not be sold in less quantities than one gallon, and should not be drunk at the place of sale. Such a regulation violates no private right, and does not unreasonably or improperly restrain trade. Powell v. Commonwealth, 127 U. S. 678 (32 L. ed. 253, 8 Sup. Ct. 992); Stokes v. New York, 14 Wend. 88; Mobile v. Yuille, 3 Ala. 137 (36 Am. D. 441); State v. Campbell, 64 N. H. 402 (13 Atl. 585, 10 Am. St. R. 419, and note). "The principal contention, however, is that the power to regulate the sale was not conferred on the city council. There is no provision of statute directly authorizing the enactment of such an

ordinance, but the legislature, after conferring power to pass ordinances for certain specific purposes, authorizes city councils 'to enact and make all such ordinances, by-laws, rules and regulations, not inconsistent with the laws of the State, as may be expedient for maintaining the peace, good government and welfare of the city, and its·trade and commerce.' Gen. Stat. 1889, par. 824. The same section of the statute provides that the ordinances passed in pursuance of this authority shall be enforced by suitable penalties therein prescribed. The ordinance under consideration is not repugnant to the constitution or laws of the State, and, as we have seen, the regulation of the same is neither unreasonable nor unjust. Every statute of the State shows the solicitude of the law to protect the health and morals of the people, and preserve the peace and good order of the communities; and it is manifest that the legislature intended that ample authority should be conferred either by express grant or by virtue of the general powers to carry out this· purpose. Instead of specifically defining every regulation which might be necessary to the health, safety, peace, and convenience of the public, the legislature enacted the general welfare clause; and it seems to us that it furnishes sufficient authority for the council to pass an ordinance so clearly in the interest of peace, good order, and health as the one in question."

Every argument why cider should be regarded as within the police power which is delegated to municipalities by the ordinary general welfare clause is emphasized in the case of "near beer" and similar liquors. The very name "near beer" is as suggestive to the guardian of the police power of a necessity for close oversight, regulation, and control as it is to the drinking classes of possibilities which they may hope to find in the beverage. Its very name, so to speak, is a transcript of its character. A liquor that is "near beer," looks like beer, smells like beer, tastes somewhat like beer, capable of cheering though not of inebriating, well deserves the attention of those whose duty it is to protect the health, peace, and good order of the community. The argument that, since "near beer" is not an intoxicating liquor, dealers in it should stand on the same footing as dealers in soda water and other similar beverages well comports with the zeal and partizanship which is to be expected of counsel in the case, but we would

stultify ourselves if we did not recognize an essential distinction and a well-marked difference between the two classes. Both businesses are in a certain sense alike legitimate; but there are many varieties of legitimate businesses. An occupation may be lawful and yet may be neither useful nor necessary—in fact may have a harmful tendency. Is the supposition to be indulged for an instant that a State tax of $200 on each soda water dealer, in addition to such municipal taxes as might lawfully be collected, would cause to be poured into the treasury the vast sums of money which the "near beer" tax has brought in? And yet, prior to the adoption of the prohibition law, when "near beer" and soda water were on an equality so far as taxation was concerned, who ever heard of a "near beer" dealer? Who, prior to the advent of prohibition, would have paid even $10 per annum for the privilege of selling imitations and substitutes for beer and other intoxicating liquors? What does all this suggest to the reasoning mind. Are we as judges to be blind to that which all our fellow citizens see and know,—that this recently-born desire of so many people to sell "near beer" springs from a recognition, on their part, of the fact that the prohibition law did not kill out old cravings, but perhaps stimulated them; that "near beer," though but a poor substitute, is nevertheless adequate somewhat to palliate the special thirst; that, though not strong enough to intoxicate, it nevertheless affords something in that direction; that "near beer" is capable of making men "near intoxicated;" and that there is a profit to be made in pandering to those desires the gratifying of which tends to suppress the judgment and sense of discretion in men and to stimulate their emotional faculties? Not only that, but what other business so facilitates the operation of a "blind tiger" and the sale of liquors that are intoxicating? The State and, under its authority, the municipalities have the right "to enact rules for the conduct of the most necessary and common occupations, when from their nature they offer peculiar opportunities for imposition and fraud." *Bazemore* v. *State,* 121 *Ga.* 620 (49 S. E. 701), citing Cooley's Const. Lim. (7th ed.) 887, and Turner *v.* Maryland, 107 U. S. 41 (2 Sup. Ct. 44, 27 L. ed. 370). In Powell *v.* Pennsylvania, 127 U. S. 684 (8 Sup. Ct. 992, 1257, 32 L. ed. 256), the United States Supreme Court held that the possibility that "the manufacture of oleomargarine.

or imitation butter of the kind described in the statute is or may be conducted in such a way or with such skill and secrecy as to baffle ordinary inspection" is a ground for even its entire prohibition, and, of course, as a consequence therefrom, the strictest regulation under the police power, and upheld the statute as applied to that case, notwithstanding the fact that Powell's particular oleomargarine was properly manufactured and was no menace to health. This ruling was followed in the case of Capital City Dairy Co. *v.* Ohio, 183 U. S. 238, 245 (22 Sup. Ct. 123, 46 L. ed. 175), in which the court said: "The proposition is, that, as by the Ohio statutes harmless coloring matter is permitted to be used in butter, the effect of prohibiting the use of such harmless ingredients in oleomargarine is to deprive the manufacturer of oleomargarine of equal protection of the laws, and to take from him his property without due process of law. The Supreme Court of Ohio, however, having before it the evidence introduced upon the issues of fact made in the pleadings, held that oleomargarine was an article which might easily be manufactured so as to be hurtful, and thus result in fraud upon and injury to the public, and that the inhibition of the use of coloring matter in oleomargarine was a reasonable police regulation tending to insure the public against fraud and injury." And the statute was held to be a valid exercise of the police power. See also Plumley *v.* Massachusetts, 155 U. S. 461 (15 Sup. Ct. 154, 39 L. ed. 223). The very possibility which "near beer" and imitations and substitutes for beer and other intoxicating liquors afford toward the palming off of real beer and actual intoxicating liquors under that guise, as well as of selling beverages dangerous to the public health, places the business of dealing in them under the guardianship and control of the police power.

Therefore, while the municipalities in this State, under their general welfare clauses and in the absence of broader and express delegation of authority, may, as to the business of dealing in the class of beverages here under discussion, regulate only, and not prohibit, and while the regulation must be reasonable and not arbitrary, yet regulations may be sustained as being reasonable as applied to such occupations, which would be void for unreasonableness if they were made to relate to callings of a different nature. On this general subject see 28 Cyc. 733, 734; Gundling

*v.* Chicago, 177 U. S. 183 (20 Sup. Ct. 633, 44 L. ed. 725);
Powell *v.* Pennsylvania, supra; Capital City Dairy Co. *v.* Ohio,
supra; Ex parte Byrd, 84 Ala. 17 (4 So. 397, 5 Am. St. Rep. 328);
Turner *v.* Maryland, supra; Holden *v.* Hardy, 169 U. S. 393 (18
Sup. Ct. 383, 42 L. ed. 780); Soon Hing *v.* Crowley, 113 U. S.
703 (5 Sup. Ct. 730, 28 L. ed. 745); *Williams* v. *Augusta,* 4
*Ga.* 509; *Green* v. *Savannah, 6 Ga.* 13; *Nagle* v. *Augusta, 5 Ga.*
546; *Watson* v. *Thomson,* 116 *Ga.* 546 (42 S. E. 747, 59 L. R. A.
602, 94 Am. St. R. 137); *Badkins* v. *Robinson, 53 Ga.* 614; *Bear-*
*den* v. *Madison, 73 Ga.* 184; *Cosgrove* v. *Augusta,* 103 *Ga.* 835
(31 S. E. 445, 42 L. R. A. 711, 68 Am. St. R. 149); *Crum* v.
*Bray, 121 Ga.* 709 (49 S. E. 686); *Bazemore* v. *State, 121 Ga.*
620 (49 S. E. 701). We have intentionally omitted the citation
of a great number of intoxicating liquor cases to which reference
might be had on the general subject, for fear that we may give
the impression that we are deciding this case as if the sale of
intoxicating beverages were involved. Fundamentally, however,
the right to regulate the sale of intoxicating liquors differs only
in degree from the right to regulate imitations and substitutes
for such beverages, and especially those which approach closely
to the border line of being intoxicating. In general terms it
may be said that municipal corporations, in dealing with the
sale of "near beer" and like beverages, may, under the general
welfare clause, adopt all fair and appropriate regulations which
would tend to prevent the business from becoming a nuisance by ·
attracting together idle or disorderly persons, or by otherwise
tending to disturb the public peace and tranquility; or from
becoming a menace to health by reason of the sale of impure or
unwholesome liquors; or from becoming a means of violating
the law as to the sale or keeping of intoxicating liquors. Keeping
in mind these general principles, as well as the recognized doc-
trine that municipal ordinances are to be considered prima facie
as reasonable, and that all serious doubt is to be resolved in favor
of their validity, we will now proceed to take up the particular
provisions of the ordinances before us for consideration.

5. One of the most apposite and effective means of securing
the public against nuisance, menace to health, or violation of
law, as a result of the sale of "near beer," is to confine the busi-
ness to persons of good character. Regulation to this extent has

frequently been upheld. In Gundling *v* Chicago, supra, it is held that it is reasonable for a municipality to require evidence of the applicant's good character, as a condition precedent to the issuance to him of a license to sell cigarettes. It is further held that it is not arbitrary or unreasonable to require the applicant to submit this question to some designated official or tribunal; it being presumed, until the contrary appears, that the question will be honestly and impartially decided. Hence, we hold that so far as the ordinances in question require a written application to be made to the governing body of the respective cities, and require a permit or license from them, it is valid. If the right to sell were arbitrarily refused in any case, the courts would have adequate power to correct that wrong. See Yick Wo *v.* Hopkins, 118 U. S. 356 (30 L. ed. 220, 6 Sup. Ct. Rep. 1064). But as the Supreme Court of the United States held in the case of Gundling *v.* Chicago, supra, no such question arises until there has been an application for a license and a refusal to grant it.

6. It is, of course, proper to require the applicant to designate, and, if necessary, to describe, the room and building in which he proposes to locate the business. For obvious reasons it would be manifestly proper for the tribunal passing on the application to refuse it, if it appeared that the business was about to be carried on in some remote section of the city, or in a residential portion, or near a church or school, or in some upstairs back room; and this enumeration is not exhaustive. Indeed, we think it would be perfectly legitimate for the municipal legislature to confine, by general ordinance, the business to certain reasonable limits. As to this see Ex parte Byrd, supra; Shelton *v.* Mobile, 30 Ala. 540 (68 Am. D. 143) ; Holden *v.* Hardy, supra; *Sanders* v. *Elberton, 50 Ga.* 178, and cases there cited; *Badkins* v. *Robinson, 53 Ga.* 615. When only the power to regulate and not also to prohibit is possessed by the municipality, these limits must be such in extent as to afford a reasonable opportunity that the business may be conducted within them. What is reasonable is a fact primarily for the municipal body; but the courts are under the duty of declaring the limitation void if, from aliunde facts appearing in the record, its unreasonableness is established. Yick Wo *v.* Hopkins, supra; *Bearden* v. *Madison,* 73 *Ga.* 184. It appears from the record in the Waycross case, under consideration,

that the limitation that the business shall be conducted only "on Plant avenue between Gordon street and Frances street," especially when taken in connection with the provision requiring the consent of all owners and occupants of stores, shops, residences, and other buildings within a radius of one hundred yards of the place where the business is to be conducted, is unreasonable; that it amounts to substantial prohibition, and not to regulation. It appeared on the trial that the distance along Plant avenue from Gordon street to Frances street is 900 yards, including the parks and intersecting street, and that there were 55 store-rooms fronting on this portion of the avenue; that this was the principal business street of the city, but that several other parallel and intersecting streets in this section of the city were also devoted to business purposes, and were equally open to police patrol and protection. It further appeared that the owners of all the vacant houses on Plant avenue, within the designated limits, had been applied to and had refused to rent their property for the sale of "near beer." Indeed, it is impossible to read this provision of the ordinance in connection with the testimony in the record without reaching the conclusion that the object of the city council was not to regulate the business in question, but to prohibit the defendant and all others from engaging in it at all.

The provision in the Waycross ordinance, that the applicant shall present the "written consent of *all* the owners and occupants of stores, shops, residences and other buildings within a radius of one hundred yards of the place where the business is to be conducted," smacks of prohibition rather than regulation. It would be a legitimate exercise of discretion for a city council to refuse to allow a "near beer" stand to be located in a place where it would be generally objectionable to the neighbors, but to allow the arbitrary refusal of consent by one property holder, or one occupant of a building, to defeat the right to carry on the business, when all the others similarly situated have consented, is hardly reasonable. If the provision were that a majority, or perhaps even two thirds of the neighbors, should consent, we would uphold it; but as it is, we are constrained to declare it void.

7. There is nothing unreasonable in requiring one who is about to engage in selling "near beer" to give bond to keep an orderly house, or to comply with the regulations governing the business,

and not to violate the State law, or even, as is provided in the Thomasville ordinance, to pay such fines as may be imposed for violations of the ordinance. Such a provision is a wholesome de-terrent in several respects. The very requirement that the appli-cant shall bring sponsors for his conduct tends of itself to confine the business to persons of good character. If the applicant is a person of good character, and his neighbors know that he will likely obey the law and keep an orderly house, he will usually have but little difficulty in getting sureties for his bond, no mat-ter how poor he may be. On the other hand, most persons would be chary of signing such a bond for even a rich man if he were of bad character and would likely violate the law. Besides, the very fact of being under bond for good conduct tends to make most men feel the responsibility more vividly. So far, therefore, as the ordinances require bonds they are valid. However, we do not find them so reasonable when we come to consider some of the limitations which have been prescribed as to the nature of the bonds required. In the Waycross ordinance the requirement is "for a good and sufficient bond, with a reliable guaranty company as surety." No good reason appears for the requirement of a guaranty company as the only acceptable surety. The require-ment seems to be purely arbitrary and designed for the purpose of preventing the bond from being made; for it appears from the testimony that none of the guaranty companies doing busi-ness in Waycross will undertake such an obligation as that im-posed by the ordinance. If the object of the ordinance were merely to secure, through the requiring of the bond, those legi-timate purposes to which we have referred above, there is no reason why solvent personal sureties would not be equally, if not more, acceptable. So, too, the requirement in the Thomasville ordinance that "the applicant shall file a bond, with two good securities, freeholders of said city," is arbitrary and unreasonable, so far as it prescribes that the sureties shall be freeholders of the City of Thomasville. Why would not a citizen of Thomasville having lands in the county or in an adjoining county be just as acceptable? We can see why the bond should be signed by some obligor residing in the county, so as to give jurisdiction to the local courts in the event of a breach and of an ensuing action on

it; but the provision in the ordinance goes far beyond this. Any solvent surety in Thomas county ought to be acceptable.

8. Both the ordinances prohibit drinking on the premises, and have regulations against loitering and idling, and, also, in consonance with this general scheme, against having tables, gaming stands, etc., in connection with the business. These are salutary regulations and enforceable. We need to cite only the Kansas case from which we have quoted so copiously in an earlier portion of this opinion. Monroe v. Lawrence, 44 Kan. 609 (24 Pac. 1113, 10 L. R. A. 520). The provision against having the "near beer" stand in a place devoted to other business does not seem to be arbitrary or unreasonable. Many reasons suggest themselves as to why this is best.

9. The provisions against keeping open during the night hours,. and on Sundays, election days, and legal holidays appear to be reasonable. Justice Cobb, speaking for the Supreme Court in the case of *Watson* v. *Thomson,* supra, after holding that a municipality may not, under its general welfare clause, prohibit an ordinary shopkeeper from following his calling on Christmas day, concluded the opinion as follows: "Of course, what is said above. with reference to the power of a municipal corporation under the general welfare clause of its charter to prevent the carrying on of lawful occupations on public holidays is applicable only to occupations the prosecution of which is not calculated to disturb on the particular day the peace, good order, and safety of the community, in the sense in which those terms are understood by the law. A municipal corporation would doubtless have the right even to prohibit entirely on a given day the carrying on of a business which, though lawful, was of such a character that its prohibition for the time was absolutely essential to the welfare, in a legal sense, of the community." It may be that the statement quoted above is subject to the criticism that it is obiter, but it is manifestly sound.

10. We also sustain the provisions of the ordinances which prohibit screens, shades, stained windows, and other devices for obscuring the view of the interior of the room in which the business is to be conducted. These regulations are legitimately designed to prevent violations of the law.

11. The requirement that minors shall not be allowed in the.

place of business is unquestionably valid, though the provision that "near beer" shall not be sold to minors is unenforceable because that offense is already covered by the general law of the State. Penal Code, §444; *Stoner* v. *State, 5 Ga. App.* 720 (63 S. E. 604). With but little less doubt we hold the provision in the Waycross ordinance against selling to females to be valid, though it may become unreasonable in certain special cases.

12. The limitation in the Waycross ordinance that not less than one pint shall be sold seems to be sustainable, upon the reasoning of the Kansas case of Monroe *v.* Lawrence, cited above; but the limiting of the maximum quantity of one quart seems to be arbitrary, when we reflect that, by its very definition, "near beer" is a beverage which, even if drunk to excess, will not produce intoxication.

13. The provisions for the forfeiture of the license upon the holders being convicted of violating the provisions of the ordinance or the laws of the State is, of course, reasonable.

14. The requirement that the bottles, vessels, barrels, etc., containing the liquid shall be plainly stamped, so as to show their contents and the names of the manufacturers, is valid. So also is the provision of the Thomasville ordinance that the dealer shall furnish samples to be tested for the purpose of ascertaining the amount of alcohol contained in the different drinks offered for sale; and while it is competent for the ordinance to provide that a failure to furnish the samples shall be taken as prima facie evidence that the dealer is keeping intoxicating liquors on hand for the purpose of illegal sale (the municipal offense), this provision is entirely nugatory so far as it attempts to create thereby a statutory presumption of his guilt of selling intoxicating liquor—an offense cognizable only in the State courts.

15. With the amount of license fee fixed in the ordinances, these plaintiffs in error have no concern; they are indigent Confederate soldiers, and therefore exempt. *Burch* v. *Ocilla, 5 Ga. App.* 65 (62 S. E. 666). We may say in passing, however, that the provision in the Thomasville ordinance limiting the exemption to only one place of business seems to be contrary to the decision of the Supreme Court in the case of *Hartsfield* v. *Columbus,* 109 *Ga.* 112 (34 S. E. 288). So, also, by way of obiter, we may call attention to the fact that under the 16th section of

the charter of the City of Waycross (Acts 1889, p. 904), the mayor and aldermen are given the power to license the sale of malt liquors of every kind whatever;" but the minimum fee is fixed at $10,000. "Near beer" is a malt liquor, and is subject to taxation as such, irrespective of its lack of intoxicating quality. *Eaves* v. *State,* 113 *Ga.* 757 (39 S. E. 318). There is a perfectly good reason why the courts construe the words "malt liquors," in a prohibition statute, as including only intoxicating liquor, while they add no such limitation by construction if the words appear in a taxing statute.

16. There is involved in the contentions of the plaintiffs in error an insistence that, because they are indigent Confederate soldiers, they stand on some securer footing as to their right to engage in the business than other persons do. They are exempt from the payment of the municipal license fee. Both ordinances inferentially, if not directly, recognize that fact. Otherwise than this, indigent soldiers stand in regard to the reasonable police regulations of the municipalities just as all other citizens do. Section 1642 of the Political Code of 1895, as amended in 1897 (Acts 1897, p. 24; Van Epps's Supplement, § 6146a), provides that these worthy objects of legislative grace may conduct business in any town or city "without paying license for the privilege." Certain exceptions are enumerated, but the selling of "near beer" is not one of the exceptions. *Burch* v. *Ocilla,* supra. They are not exempt from the State tax (Acts 1908, p. 1112). But by exempting them from the payment of the municipal license fee, the legislature did not intend that they should be exempt also from those reasonable police regulations which the cities and towns have the right to enact. Whatever business is open to other citizens, with or without restriction, upon the payment of a license fee, is open to them upon the same restrictions without the payment of that fee. The writer, and, indeed, all the judges of this court, have the highest love and veneration for those veterans who served the State so unselfishly in perilous days gone by, and we have no desire to take away from them any exemptions or to limit any privilege extended to them by the laws of the State, but with all our love for them we must recognize that they are nevertheless subject to the laws and regulations enacted and adopted to preserve the health, peace, good order,

and safety of the State and the various communities thereof. See the concluding remarks of the opinion in *Land* v. *State, 5 Ga. App.* 98 (62 S. E. 665).

17. From what we have said above, it will appear that we are of the opinion that the constitutional objections urged against the Thomasville ordinance are not well taken. The classification of the business as being different in kind from that of selling drugs and ordinary non-intoxicating drinks, such as soda water, etc., is not arbitrary or factitious. It does not deny to the plaintiff in error, or to any one else, the impartial and complete protection contemplated by the constitution; nor does it deprive him of his property without due process of law.

18. Coming now to the more specific application of these general principles to the cases made by the records before us, it will be seen that several provisions of the Waycross ordinance have been held to be unreasonable and void, and that one requirement of the Thomasville ordinance has been held to be invalid. What effect does this have upon the convictions? An ordinance may be void in part and good in part; the void and the good may be so interdependent as to render the whole void, or may be so separable as to allow a segregation and the enforcement of one part while the remainder is nugatory. Ex parte Byrd, 84 Ala. 17 (4 So. 397, 5 Am. St. R. 328) ; *City Council of Augusta* v. *Clark,* 124 *Ga.* 254 (52 S. E. 881) ; *Joseph* v. *Milledgeville,* 97 *Ga.* 513 (25 S. E. 393) ; *Mattox* v. *State,* 115 *Ga.* 212 (41 S. E. 709) ; *Duren* v. *Stephens,* 126 *Ga.* 496 (54 S. E. 1045) ; *Papworth* v. *State,* 103 *Ga.* 36 (31 S. E. 402). So also an ordinance apparently reasonable on its face may be shown to be unreasonable and invalid as actually applied to the existing state of circumstances. *Bearden* v. *Madison,* 73 *Ga.* 184; Yick Wo *v.* Hopkins, 118 U. S. 356 (6 Sup. Ct. 1064, 30 L. ed. 220). We do not think that the invalid requirement in the Thomasville ordinance is so material a part of the enactment, so interwoven into the whole legislative scheme, that its presence renders the entire ordinance void. Nor does the existence of this clause in the ordinance render the conviction of Campbell, the plaintiff in error, contrary to law. He made no attempt to comply with the ordinance. He made no application whatever to the council. He tendered no bond at all. The only unreasonable requirement is

that the sureties tendered on the prescribed bond should be free-holders of the City of Thomasville. The defendant, who had ignored the ordinance entirely, stands somewhat upon the same footing as did Gundling in his case against Chicago. Mr. Justice Peckham, speaking for the United States Supreme Court in that case, said: "It seems somewhat doubtful whether the plaintiff in error is in a position to raise the question of the invalidity of the ordinance because of the alleged arbitrary power of the mayor to grant or refuse it. He made no application for a license, and of course the mayor has not refused it. Non constat that he would have refused it if application had been made by the plaintiff in error. Whether the discretion of the mayor is arbitrary or not would seem to be unimportant to the plaintiff in error so long as he made no application for the exercise of that discretion in his favor and was not refused a license." Gundling v. Chicago, supra. In the case of *City Council of Augusta* v. *Clark,* supra, it was contended that the requirement in an ordinance, then under consideration, for the giving of a certain bond was void. The court said, "It is said that this act is unconstitutional, for various reasons set forth in the petition, and, the act being unconstitutional, as the ordinance requires a compliance with the act, the ordinance is void for requiring something to be done which the city council had no right to require. It is unnecessary in this case to pass upon the constitutionality of the act. If it is constitutional, then the plaintiffs, so far as the character of the business regulated by the act is concerned, would be compelled to give the bond therein required. . . But suppose the act is unconstitutional, then in order to obtain a license from the City of Augusta they would not be required to give a bond, because they could not be required to give a bond under an unconstitutional law. The city council had a right to impose a tax upon the class of persons to which the plaintiffs belonged, and the tax as imposed is not subject to any of the objections urged by them. They are therefore subject to the payment of the tax. They have not paid the tax required of them. When they have paid or tendered this tax, and a license is refused them on the ground that they have not given the bond required by the ordinance, they can then raise the question whether the act referred to in the ordinance is not unconstitutional. The question as to the consti-

tutionality of the act of 1904 is therefore prematurely made. It may be that the city will not require the bond to be given. If it does, then the plaintiffs may with propriety invoke a decision of the court as to the validity of that law. If that part of the ordinance requiring the bond to be given is invalid, its invalidity would not void the whole ordinance, for the reasons given in a preceding portion of this opinion; and, until they have complied with that part of the ordinance which is unquestionably valid, they will not be heard to question the constitutionality of the act of the General Assembly that is made a part of the ordinance by reference to the same." *City Council of Augusta* v. *Clark,* supra. So, too, if the present plaintiff in error had made an application to the city council of Thomasville, accompanying it with a bond otherwise sufficient, and they had refused it because the sureties were not freeholders of the ctiy, he would have been in a position to insist on the point; but as it is, he is not in a position to do so. The conviction in his case will be sustained.

In Jones's case it appears that he did attempt to comply with the ordinance, and his efforts were met at the threshold by unreasonable requirements. Indeed, looking at the Waycross ordinance as a whole, it is impossible to escape the conclusion that its but thinly-guised purpose was prohibition, and not regulation, and that it is therefore void for repugnancy to the general policy evinced by the legislature in the passage of the "near beer" tax act of 1908. Therefore the conviction in the Jones case will be set aside.

*Judgment affirmed* in case No. 1813. *Judgment reversed in* case No. 1820.