HARTFIELD *et al. v.* CITY OF COLUMBUS (two cases).

1. A disabled or indigent Confederate soldier holding the proper certificate from an ordinary may, except as to those kinds of business in which he is not by virtue of such certificate authorized to engage, lawfully conduct as many lines of business as he is able to carry on in his own name and upon his own account, without paying to any municipal corporation a license tax upon any particular business so carried on or upon any subordinate branch thereof.

2. An agent, servant, or employee of a Confederate soldier lawfully operat-

ing under such a certificate is not amenable to a city ordinance impos-
ing a penalty for "doing business without license."

Argued October 5, — Decided October 27, 1899.

Certiorari.  Before Judge Butt.  Muscogee superior court.
May term, 1899.

*Cameron & Hargett*, for plaintiffs in error.
*Francis D. Peabody*, contra.

LUMPKIN, P. J.  The plaintiffs in error, Hartfield and Salter,
were separately convicted, in the recorder's court of the City
of Columbus, of the offense of "doing business without license."
Each sued out a certiorari, which was overruled, and he ex-
cepted.  In this court the two cases were argued together, and
may be disposed of in the same manner.  The facts are substan-
tially as follows:  J. R. Christian and William A. Adams were
indigent Confederate soldiers, and each of them had received
from the ordinary of Muscogee county a certificate authorizing
him to conduct business without any license for this privilege.
Christian was carrying on within the City of Columbus a dray-
ing business, in the conduct of which he employed Hartfield
as a driver.  The latter had no interest in the business or in
the property used in carrying on the same, but was simply
working for wages as the servant of Christian.  Adams was
the owner of a wood-yard and carried on the business of retail-
ing wood in the city.  Salter was a mere employee of Adams,
having no interest in the business but working for wages,
which he earned by driving a wagon belonging to Adams and
delivering wood to the customers of his employer.  On some
occasions, Salter carried wood about the city for sale in small
quantities, found purchasers for the same, and collected the
price thereof, his so doing being an incidental feature of the
business of Adams.  The two cases, in the view we take of the
law, stand upon substantially the same footing.  Section 1642
of the Political Code, as amended by the act of December 9,
1897 (Acts of 1897, pp. 24–5), authorizes any indigent or dis-
abled Confederate soldier residing in this State to "peddle or
conduct business in any town, city, county or counties thereof,
without paying license for the privilege of so doing, . . pro-

vided that this section shall not authorize peddling or dealing in ardent and intoxicating drinks." By the act of December 20, 1898 (Acts of 1898, pp. 46–7), this section was further amended so as to prohibit soldiers operating under certificates from the ordinary from "running a billiard, pool, or other ta-ble of like character, or dealing in futures, or peddling stoves or clocks, or carrying on the business of a pawnbroker or auctioneer, or dealing in lightning-rods."

The position of counsel for the city was, that under the law a Confederate soldier could not carry on more than one kind of business by virtue of his certificate from the ordinary; and further, that even if a Confederate soldier engaged in only one particular business having subordinate branches which were the subjects of municipal taxation, he was not exempt from paying the license imposed by the tax ordinance of the city upon each of such branches. In this connection it was urged that as the city levied an occupation tax of ten dollars on a dealer in wood, and also a specific license tax on each wagon or dray used by such dealer in connection with his business, a Confederate soldier engaged in such business, while exempt from paying the ten dollars as an occupation tax, would be liable for the specific tax levied on each wagon or dray used by him. The case of *Macon Sash Company* v. *Macon*, 96 *Ga.* 23, was cited in support of the contention that a general license to conduct a given business does not exempt a person carrying on the same from paying an additional license tax on each of the subordinate branches thereof. We do not think, however, the decision in that case is at all applicable to those now under consideration. The fundamental mistake of counsel for the city lies in the proposition advanced by him, that the certificate of the ordinary limits the holder of the same to the transaction without license of one particular kind of business only. We are firmly of the opinion that under the law the holder of such a certificate is authorized to engage in business generally, and therefore to carry on as many different lines of business as he may be able with his own means to conduct in his own name and on his own account. Of course, he could not legally transfer his privilege, directly or indirectly, to another. We ac-

cordingly hold that a Confederate soldier having a proper certificate from the ordinary may carry on a draying business without paying any license for the privilege of so doing, and also without paying any specific taxes upon the drays used by him in connection therewith; and further, that he may engage in selling wood and delivering the same by wagons without becoming liable for any municipal tax either upon his occupation or upon the vehicles by means of which his business is conducted. As a matter of course, his servants and employees are also protected by the certificate under which he operates, and can not themselves be called upon to pay for any license covered by the exemption granted to him.

It follows from the above, that the conviction of the plaintiffs in error was unlawful, and that the superior court erred in holding to the contrary.

*Judgment in each case reversed. All the Justices concurring.*