### 1341.  GROW *v.* THE STATE.

"Although newly discovered evidence may tend to establish the truth of a material contention in direct support of which testimony was introduced at the trial, such evidence is not merely cumulative when it relates to a particular fact concerning which no witnesses had already testified" (*Fellows* v. *State,* 114 *Ga.* 233); and when such evidence is, adduced from witnesses properly vouched for, and it appears that there. was no want of diligence in discovering the new evidence, and that it may probably cause a different result upon another hearing, to refuse a new trial is error.

Accusation of larceny, from city court of Miller county—Judge Calhoun presiding. July 17, 1908.

Argued October 7,—Decided October 26, 1908.

*B. B. Bush, Pottle & Glessner,* for plaintiff in error.

*N. L. Stapleton, solicitor,* contra.

RUSSELL, J.  R. W. Grow, the plaintiff in error, was convicted in the city court of Miller county of the offense of simple larceny, it being alleged that he stole three rolls of wire fencing, of Lyons' make, from one L. Cowart, the prosecutor.  Upon the trial the prosecutor testified, that he lost three rolls of wire fencing, Lyons' make, from a car-load of wire which he received during the summer of 1907; that he had hauled a portion of the car-load to his father's (A. J. Cowart's) place, and a portion of it to J. G. Powell's store, and left three rolls of it on the railroad right of way, near the depot and near J. S. Bush's warehouse; and that he found the three rolls of fencing on the defendant's place on the creek one day while he was hunting for convicts.  He knew that J. G. Powell had let the defendant have four rolls of wire, from the wire left at Powell's store, and that those four rolls had been paid for.  Witness found the four rolls around the defendant's field, along the road, and found the other three rolls on the back side of the defendant's place, next to the creek.  He spoke to the defendant about the matter one day, between Fudge's store and the court-house, and the defendant denied having more than four rolls.  Witness offered to take him out in a buggy and show him that he had seven rolls, instead of four, but he refused to pay for more than four rolls.  Witness had been hunting for the wire four or five months before he found it.  A. J. Cowart testified, for the State, that he had not sold the defendant any wire fencing at all, and that he had not authorized him to get the three rolls in question at the depot, as he did not even know that they were at the depot.  J. G. Powell testified, that he sold the defendant four rolls of fencing, and that the defendant paid for it, but he did not sell him the wire fencing at the depot.

In behalf of the defendant his driver testified, that he hauled three rolls of wire fencing from the depot for Mr. Grow (the defendant), that Mr. Grow gave him an order which he carried to Mr. Cowart's store, and Mr. Cowart told him that he had sold all the fencing that he had at the store, but that he had three rolls at the depot, and asked the witness to go by the depot and get it; and that he (the witness) gave the order to Mr. Cowart and got the three rolls of wire from the depot.  Another witness testified, that Mr. Cowart and Mr. Grow had some words in Mr. Grow's law office about an account for lumber and wire; that Cowart

told Grow that he had an order for everything on the account, and Grow claimed to have had a settlement with Cowart last year, and said he thought that he had paid for the wire, but if Cowart would prove that he had not paid for it, he would do so. Another witness testified to a similar conversation between Grow and Cowart, in which Grow told Cowart that he did not owe that much for the lumber, and thought that he had paid for the fencing; that Grow did not deny having the wire, and said that he would pay for it if Cowart would show that he had not done so. The defendant, in his statement to the jury, said, that he gave an order to Walter Williams, his driver, for the wire, after having just been to the store of A. J. Cowart, the prosecutor's father, and seeing some wire there, and after A. J. Cowart had "told me that he would sell it to me, and I could send and get it at any time." Defendant further stated, that he knew nothing about the wire having been hauled from the depot, until the warrant was sworn out, and that when the prosecutor first came to him and asked about the wire he did not remember it, and told him if he got it it had been settled for. Defendant denied ever having said that he did not have seven rolls of wire. He stated that he had bought four rolls of Jesse Powell and paid for it, and, after that time, sent an order to Cowart's store for three rolls, but he had never heard that the wire came from the depot, until the day the warrant was sworn out. He said that he had never denied having possession of the wire, but he did deny having it hauled from the depot; and he stated further that the wire lay for three months or more on his place, within a few feet of the public road, and was put up along the public road.

In the first ground of the amended motion for new trial, complaint is made that the court erred in refusing to allow the witness Walter Williams to testify that he carried to A. J. Cowart a written order, signed by R. W. Grow, on A. J. Cowart for three rolls of wire fencing at the depot in Colquitt, Georgia, and refused to allow the witness to state the contents of said writing. The court refused to permit this testimony, upon the ground that the original writing had not been accounted for. It appears from the record that, prior to this ruling, Walter Williams had testified that he delivered the order in question to A. J. Cowart, and that A. J. Cowart had instructed him to go to the depot and get

the wire fencing there and deliver it to Mr. Grow, and that the witness had gone to the depot and gotten the three rolls of wire, and had delivered it on Grow's plantation; that A. J. Cowart testified, that he had received no such order from the witness Williams, and that Williams had not delivered him any such order from Grow for wire fencing. It further appeared, from the evidence, that A. J. Cowart had authority to deliver wire for his son, L. Cowart. We do not know that the refusal of the court to permit the questions to be answered was materially prejudicial to the defendant; for the reason that the witness was permitted to testify to enough to lead the jury to infer that the order was from Grow, and related to the three rolls of wire fencing in question; for he testified, that he got the order from Grow, and delivered it to A. J. Cowart, and that when he did this, Cowart told him to go to the depot and get the three rolls of wire fencing. But we think the defendant had sufficiently accounted for the loss of the original to entitle him to prove its contents by secondary evidence. It is true, he had not served a subpœna duces tecum upon A. J. Cowart, but, as Cowart had denied ever having received such an order, he had proved that a subpœna duces tecum would have been unavailing, and that he would not have secured the original order by serving such a subpœna upon A. J. Cowart or upon L. Cowart. And it appeared, from the testimony of Walter Williams, that the order was no longer in his possession.

Upon the motion for new trial, the defendant introduced the affidavits of H. S. Sutton and T. W. DeBary, and asked another hearing, upon the ground of newly discovered evidence as set forth in said affidavits; and we think a new trial should have been granted upon this ground. The whole issue in the case turned upon the question of intent. That the three rolls of wire fencing, described in the accusation, and which belonged to the prosecutor, had been taken by the defendant and were in his possession was not denied. The only question was, whether he had bought them or had stolen them. The evidence tending to show the defendant's guilt was wholly circumstantial, and necessarily must be sufficient to exclude every other reasonable hypothesis than that the intent of the defendant was to steal. If the defendant sent the order for the wire fencing, and upon that order it was furnished him, he is clearly innocent. If he sent no order

and obtained the wire fencing without the knowledge or consent of the prosecutor (or of either of his agents for the sale of wire fencing), the verdict rendered by the jury might be authorized. Sutton testified, by affidavit, that he saw the order given by the defendant to Walter Williams on A. J. Cowart for the three rolls of wire fencing in dispute, and that he saw the defendant and A. J. Cowart in conversation, and knew it was in reference to said wire fencing. DeBary testified, that during the fall of 1907 he had a conversation with Cowart, the prosecutor, in which he tried to purchase the wire fencing from Cowart, and in which conversation Cowart told the affiant that he had three rolls of wire fencing at the depot in Colquitt, but that the same had been sold to Mr. R. W. Grow on the preceding Saturday. Sutton further swore, that the order which he saw was handed to him by Walter Williams, who came to his place of business, inquiring for some screen doors and windows which were being made for said Grow, and that the order was as follows: "Mr. A. J. Cowart: Please send by wagon *the three rolls* of wire fencing;" that deponent read the order and gave it back to Williams, and told him it was not for the screen doors and windows, but was for wire fencing, and was intended for Mr. Cowart; and that Williams drove off towards the store of Cowart. Sutton also testified, that about the 6th of July, 1907, he was present at a settlement between Jeff Cowart and Grow, and that they walked out to where some wire fencing was lying, and he could see from the movements of both parties that they were talking about the wire; and that as deponent and Grow started to get into their buggy to go home, Jeff Cowart told Grow to send for the wire fencing when he got ready for it, as he had it there for sale. We place our judgment on Sutton's affidavit; for DeBary's affidavit was contradicted by an affidavit of L. Cowart, not only denying the conversation to which DeBary testified, but stating that DeBary had taken an active interest in behalf of the defendant, and was in conversation with him at the court-house upon the day of the trial; and the trial judge had the right to use his own preference in determining this conflict. There is, however, no contradiction of Sutton's two affidavits. If Sutton had been introduced as a witness and had testified that he saw the order that Grow sent, in which "*the three rolls* of wire fencing" were specifically referred to, and the

jury believed the testimony, it would be impossible to convict the defendant; because there would not only be an absolute failure to prove the animus furandi, but, on the contrary, the honesty of purpose in a legitimate transaction of purchase and sale would be demonstrated beyond question.

Though this evidence may be in some sense impeaching, as related to the testimony of A. J. Cowart, who says he received no such order from Grow, it is not necessarily wholly impeaching. It is a circumstance newly discovered which throws light upon the intent of the accused, regardless of whether the testimony of Mr. Cowart should be impeached or not. For even if Mr. Cowart's testimony be true, that Williams never delivered him any such order, still, if Grow gave this order to his agent and directed him to deliver it to Cowart, and obtained the wire fencing upon the order, in ignorance of the fact that his driver had not delivered the order, he could not have had any intent to steal. He would have presumed that the order was delivered, and that he had purchased the wire fencing in question. And the newly discovered evidence of Sutton is more than cumulative, because the language employed, "the three rolls of wire fencing" indicates a previous bargain, in which the three rolls of wire fencing had been separated and identified. As well said by Judge Lewis, in *Fellows* v. *State,* 114 *Ga.* 233 (39 S. E. 885), "although newly discovered evidence may tend to establish the truth of a material contention in direct support of which testimony was introduced at the trial, such evidence is not merely cumulative when it relates to a particular fact concerning which no witness had already testified. Thus, where in a criminal trial the defense was alibi, and the accused introduced witnesses who testified that on the day of the commission of the crime they saw the accused in a county other than that in which it was perpetrated, he being on that day, according to the testimony of some of them, at one place in the county to which their testimony related, and, according to the testimony of others of them, at other places therein, and, according to the testimony of all, too far from the scene of the offense to have been possibly present at the time of its perpetration, newly discovered testimony of still another witness, which placed the accused, in the county where the other witnesses located him on the day in question, at a different hour and place from any

testified to by them, is not merely cumulative, though it of course tended, like the other testimony, to establish the truth of the defense of alibi."

In the present case testimony was introduced tending to show an intent to buy, and not an intent to steal. But the witness Sutton testifies to two distinct circumstances, tending, like those introduced, to establish an innocent intent, but not previously testified to by any witness. It appears that Sutton moved to Albany a short time after the transaction involved in this case, and that ordinary diligence would not have ascertained the facts related by him; and his character for truthfulness and veracity is properly vouched for. The case, upon the point of intent, depends entirely upon circumstantial evidence, from which the guilt of the defendant may gravely be doubted. We, therefore, think that the court erred in not granting a new trial. *Judgment reversed.*