### 4525. ANGLIN *v.* THE STATE.

In availing himself of the benefits of the exemption from license taxes, conferred by the certificate of the ordinary, a Confederate soldier may employ clerks and other employees in the operation of any business which the certificate authorizes him to conduct. "As a matter of course, his servants and employees are also protected by the certificate under which he operates, and can not themselves be called upon to pay for any license covered by the exemption granted to him." *Hartfield* v. *Columbus,* 109 *Ga.* 115 (34 S. E. 289).

DECIDED JANUARY 22, 1913.

Indictment for misdemeanor; from city court of Americus—Judge Harper. October 18, 1912.

*L. J. Blalock,* for plaintiff in error.

*J. R. Williams, solicitor-general,* contra.

RUSSELL, J. Robert Anglin was presented for peddling before registering and paying the peddler's tax for the year 1912. By agreement of counsel, he was tried, upon an agreed statement of facts, before the court, without the intervention of a jury. It was agreed that Z. T. Anglin, the father of the defendant, had a Confederate soldier's license to peddle, and was, by the proper ordinary's certificate and otherwise, qualified to peddle, and that, although the defendant had no license to peddle, he was hired by his father for wages, had no interest himself in the business, and peddled and worked as an employee and agent of his father. None of the articles which the accused was alleged to have peddled fall within those businesses which are unaffected by a Confederate veteran's certificate. The court adjudged the defendant guilty, and the present writ of error challenges that judgment.

In our opinion, the ruling in this case must be controlled by the decision of the Supreme Court in *Hartfield* v. *Columbus,* 109 *Ga.* 112 (34 S. E. 288). It is true that in that case the court was dealing only with a municipal ordinance, and the indictment in this case concerns the payment of a State tax levied upon peddlers, but the essential principle underlying both cases is identical. Waiving consideration of the constitutionality of such legislation (for that point is not before us), it is perfectly clear that it was the intention of the legislature, in the adoption of sections 1888-9-90-91 of the Civil Code (1910), to confer upon Confederate soldiers a substantial benefit by the grant of the exemption from license fees. It was an act of quasi-classification. No member of

this court questions the wisdom of the General Assembly, or the propriety of its action in thus indirectly conferring upon them a slight reward for their patriotism and the hardships they endured. The language of section 1891 is unambiguous: "Upon making and filing the affidavit provided for in the preceding section, the ordinary shall issue a certificate stating that said Confederate soldier has taken the oath prescribed by law, which certificate shall authorize the Confederate soldier making such affidavit and holding such certificate to conduct the business hereinbefore designated, in any county or municipality of this State, without procuring a license or being subject to any tax therefor: provided he shall not sell whisky or sewing-machines." The only question involved in the present case is whether a Confederate soldier can peddle by means of an agent or employee, or whether the benefit which the State sought to confer upon him is restricted to such peddling as his physical strength will permit him to conduct in person.

We infer that it was the intention of the legislature to allow Confederate veterans to employ agents, servants, or other employees in the conduct of their peddling, where it appears that the alleged agents and employees do in fact and in good faith sustain that relation to the holder of the certificate. A mere subterfuge or device by which the Confederate soldier's certificate would be used to relieve other peddlers would, of course, not relieve bogus agents and employees from the payment of the license tax which peddlers are by law required to pay; and, in any case, the employment of an unusual number of so-called agents would offer reasonable grounds of suspicion of the bona fides of the transaction. The legislature seems to have had this view of the case in mind in the passage of the act of 1892 (Ga. Laws, 1892, p. 99), now embodied in section 1892 of the Civil Code; for, in authorizing Confederate soldiers to carry on the business of daguerrean, photographic, or similar artist, without paying the license, it was especially enacted that the privilege should not extend to any person who had as many as three employees. And this very limitation in section 1892 clearly evidences that the legislature intended that the privilege conferred by such exemption as we are now dealing with might lawfully be exercised through such agents as the Confederate soldier might employ. So much as to the intention of the General Assembly. However, we do not place our ruling solely

upon this ground. In the *Hartfield* case, supra, the Supreme Court had before it for construction, section 1642 of the Code of 1895, as amended by the act of December 9, 1897 (Code of 1910, § 1888). Hartfield was the driver of a dray, working for wages, as a servant of Christian, who had the certificate from the ordinary of Muscogee county, authorizing him to conduct the business without a license; and the judge of the superior court held that Hartfield was subject to a drayman's license. The Supreme Court reversed this decision, and Presiding Justice Lumpkin, in delivering the opinion of the court, used the following language: "We are firmly of the opinion that under the law the holder of such a certificate is authorized to engage in business generally, and therefore to carry on as many lines of business as he may be able with his own means to conduct in his own name and on his own account. Of course, he could not legally transfer his privilege, directly or indirectly, to another. We accordingly hold that a Confederate soldier having a proper certificate from the ordinary may carry on a draying business without paying any license for the privilege of so doing, and also without paying any specific taxes upon the drays used by him in connection therewith; and further, that he may engage in selling wood and delivering the same by wagons without becoming liable for any municipal tax either upon his occupation or upon the vehicles by means of which his business is conducted. As a matter of course, his servants and employees are also protected by the certificate under which he operates, and can not themselves be called upon to pay for any license covered by the exemption granted to him. It follows from the above, that the conviction of the plaintiff in error was unlawful, and that the superior court erred in holding to the contrary."

We are aware that in the recent case of *Smith* v. *Whiddon,* 138 *Ga.* 471 (75 S. E. 635), it was ruled, upon the authority of *Howard* v. *Reid,* 51 *Ga.* 328, that one who actually travels as the vendor of patent medicines is liable for the payment of the license tax, although he is acting only as agent or employee of a disabled or indigent Confederate soldier, who, under the provisions of section 1888 of the Civil Code, is authorized to peddle without obtaining a license. This ruling is relied upon by counsel for the State in the present case. This court is bound to follow the rulings of the Supreme Court, as precedents, and it does so without question.

However, no rule is better settled than that where there is a conflict in the decisions of the same authority, the older decision must prevail; and for that reason we are bound by the ruling in the 109th *Georgia,* supra, rather than that in the 138th. The earlier ruling is not referred to by counsel in the present case. It is also to be remarked that in the case of *Howard* v. *Reid,* supra, Judge Trippe was merely laying down the rule that process should issue against the person who actually peddles, and not against a nonresident, who would not be subject to indictment for misdemeanor in case he failed to comply with the law. The question as to whether a Confederate soldier (who has been placed in a noteworthy class) presents an exception to the general rule was not before the court. . In the *Hartfield* case, supra, the identical question was squarely· presented and definitely decided. To say that the exemption from license tax which the State has conferred upon a Confederate soldier can only be used for the purpose of peddling such articles as he can personally sell would be, practically, to subvert the clear intention of the General Assembly, which was to convey, not a shadowy, but a substantial, privilege. If a sham agency, or the employment of an agent as a mere subterfuge to avoid the payment of the license tax, is attempted, justice is not so blind that the discovery of the truth can not confidently be relied upon. But the legislature must have foreseen that, with the lapse of time, the Confederate soldier would be obliged to use an agent and engage the assistance of employees, if he carried on any business whatever; and as these recipients of the benefactions of classification totter more and more weakly under the weight of advancing years, the necessity for the employment of assistance will become even greater. Surely it was not the intention of the General Assembly to say: "So long as you are able-bodied and in no great need of exemption, we will extend it to you, but when age weakens and poverty increases to the point where you really need assistance, we will compel you personally to do the work necessary to avail yourself of our benefaction, or, if you are too weak to do this, the exemption is withdrawn." As was said in *Burch* v. *Ocilla,* 5 *Ga. App.* 70 (62 S. E. 668), "No policy has been more tenaciously or more properly adhered to in this State than that of extending to Confederate soldiers, with proper qualifications, every possible exemption not forbidden by the constitution. It is beyond the power

of the legislature to pass an exemption in their favor as to their property tax, but it is within the power of the legislature, and it is the policy of the State, to exempt certain classes. of Confederate veterans from all special license taxes."

In our opinion, the only disputed point in this case is squarely ruled by the Supreme Court in the *Hartfield* case, supra; and, it being agreed that the defendant was a bona fide agent of the Confederate soldier, having no interest in the business and making no sales except for the veteran, the lower court erred in adjudging him guilty. *Judgment reversed.*