## WOODSON v. PAULK et al.

1. The decision in the case of *Smith* v. *Whiddon*, 138 *Ga.* 471 (75 S. E. 635), is controlling upon the issues in the present case.
2. The case of *Smith* v. *Whiddon*, supra, after review, is affirmed, and distinguished from the older case of *Hartfield* v. *City of Columbus*, 109 *Ga.* 112 (34 S. E. 288).

APRIL 18, 1913.

Petition for injunction. Before Judge Frank Park. Turner superior court. June 21, 1912.

*Mann & Milner,* for plaintiff.

*W. E. Wooten, solicitor-general,* and *I. J. Hofmayer,* for defendants.

BECK, J. C. B. Woodson filed a petition seeking to enjoin the sheriff and the tax-collector of Turner County from collecting a special or occupation tax from petitioner, who was engaged in selling patent medicine in said county. He alleged that he was in no way interested in the goods sold, except as the agent and employee of T. P. Buntin, who was an indigent Confederate soldier residing in Dougherty County; and he attached to his petition a copy of a certificate issued by the ordinary of Dougherty County, certifying that the said Buntin was an indigent Confederate soldier and as such entitled to the exemptions in such cases provided by law. When the case came on for trial it was submitted, by consent, to the judge to be tried by him without the intervention of a jury. It appeared from the testimony of the plaintiff that he had been employed by Buntin on salary, and that he "carried the goods with him in a buggy and sold them and delivered them on the spot." The court refused to grant the injunction, and the plaintiff excepted.

Upon a comparison of the facts in the present case with those in *Smith* v. *Whiddon*, 138 *Ga.* 471 (75 S. E. 635), it will be seen that the two cases present identically the same question. And there it was held: "Under the provision of § 946 of the Civil Code, one who actually travels as a hawker or vendor of patent medicine is liable for the payment of the tax provided for under that section, although he may not be the proprietor of the articles sold or of the animals and vehicles by means of which the articles are transported from place to place, and be acting only as the agent and employee of a disabled or indigent Confederate soldier, who, under

the provisions of § 1888 of the Civil Code, is authorized to peddle without obtaining license for the privilege of so doing." That ruling controls the present case, unless the ruling there made be, upon review, reversed. A review of the case of *Smith* v. *Whiddon* has been asked in this court, counsel for the plaintiff in error contending that it conflicts with the ruling in the case of *Hartfield* v. *Columbus,* 109 *Ga.* 112 (34 S. E. 288), and that the ruling made in the latter case, which is the older of the two, should prevail, as it has never been reversed or set aside.

Upon review of the *Whiddon* case we are satisfied as to the soundness of the decision as rendered, and do not find that it is in conflict with the ruling made in the *Hartfield* case, after giving the latter case, as well as the former, very careful consideration. In the *Hartfield* case it was said: "We accordingly hold that a Confederate soldier having a proper certificate from the ordinary may carry on a draying business without paying any license for the privilege of so doing, and also without paying any specific taxes upon the drays used by him in connection therewith; and further, that he may engage in selling wood and delivering the same by wagons without becoming liable for any municipal tax either upon his occupation or upon the vehicles by means of which his business is conducted. As a matter of course, his servants and employees are also protected by the certificate under which he operates, and can not themselves be called upon to pay for any license covered by the exemption granted to him." This ruling covers the precise issues made by the facts of that case. Stated briefly and simply, the rule laid down in the *Hartfield* case is, that a Confederate soldier having a proper certificate may conduct a business and employ therein the necessary instrumentalities, however numerous they may be, and employ servants and agents to carry on the business, and that both the instrumentalities and the servants and employees are covered by the exemption granted to the soldier. Now, if the expression, "conduct business," includes peddling, then a Confederate soldier having the proper certificate could engage and appoint others to do the peddling for him, and they would be covered by the exemption granted to the soldier holding the certificate. But while the term "business" in its broadest sense might include "peddling," and while peddling is a form of business, it will be seen from a consideration of the decisions which are cited and

quoted from in the case of *Smith* v. *Whiddon,* supra, and of the statutes providing for imposing a tax upon peddlers, and the cognate sections of the code, that "peddling" is not covered by the word "business," as employed in section 1888 of the Civil Code, that being the section under which indigent and disabled Confederate soldiers derive their right to peddle or conduct business without paying a fee or tax therefor. The expression employed in the section last referred to, "peddle or conduct business," tends to show that peddling was not necessarily included in the term "business." If so, it would have been unnecessary to use both the expressions, "peddle" and "conduct business." This idea that peddling is distinguished from "conducting business" is further emphasized by a consideration of sections 1889, 1890, and other sections to which we will refer later. In section 1889 it is provided that Confederate soldiers of a certain class are authorized to conduct the business of traveling life-insurance agents or solicitors, or fire-insurance agents or solicitors, and may "peddle in the State" without obtaining a license therefor. Here, in section 1889, the vocation of peddling is kept distinct and separate from other forms of business. And in section 1890 the Confederate soldier seeking to avail himself of the privilege of peddling without obtaining a license is required, as a condition precedent to the exercise of that privilege, to go before the ordinary of the county of his residence and make an affidavit wherein he shall state, among other things, "what business he proposes to conduct, and, if he proposes to peddle, shall state that the business which he proposes to carry on is his own, and that he will not sell, or offer to sell, any article for another, directly or indirectly." This quotation is made primarily for the purpose of showing that the vocation of peddling was kept distinct in the legislative mind, in these sections relating to peddlers and peddling, from "conducting a business," in the general and broad sense of the term "business." And it may be remarked, before passing from a consideration of that portion of section 1890 of the Civil Code which we have just set forth, that the Confederate soldier availing himself of the privilege conferred by these sections relating to peddling must take an oath that "he will not sell, or offer to sell, any article for another, directly or indirectly;" which would hardly be required of him if he were proposing to carry on a business, using the term in its broad and general sense. We do

not overlook the fact that the class of Confederate soldiers referred to in section 1890 is that of Confederate soldiers who have attained the age of fifty years, while section 1888 relates only to disabled or indigent soldiers. But that difference in the class of soldiers dealt with in no wise affects the force of the observation that in the legislative mind "peddling" was kept distinct from "business" used in its broad and general sense. There are other sections of the code showing that peddling and the peddler are dealt with as subjects of police regulation, and not merely as subjects of statutes intended to raise revenue, such as those imposing taxes upon occupations. And very properly so, when we consider the fact that the peddler under his license travels from place to place in the county, and enters the homes of citizens in order to exhibit his wares. The law requires a showing of good character to be made on the part of a person who desires to peddle, and of the sufficiency of such proof a responsible official of the State is made the judge. In dealing with the subject of granting privileges to Confederate veterans the legislature apparently felt that an indigent Confederate veteran might be treated as being a person of good character, without requiring such proof as was demanded from others desiring to peddle. But it by no means follows, because the indigent Confederate veteran may be considered as a person of good character, that every other person who may be seeking to travel about the State and enter the homes of the people to exhibit goods or property for sale, under the cover of a certificate granted to a Confederate veteran, may be assumed to be of equally good character. The liberality of the State towards its Confederate veterans did not go to this extent. In this connection we call attention to sections 1886 and 1893. In section 1886 it is provided that every peddler must apply to the ordinary of the county where he desires to trade, for a license, "which shall be granted to him on the terms said ordinary has or may impose. They are authorized to impose such tax as they deem advisable, to be used for county purposes." And in section 1893 it is provided that "Every peddler shall furnish said ordinary with evidence of his good character, and shall take and subscribe before him this oath: 'I swear that I will use this license in no other county than the one for which it is granted, nor suffer any person to use it in my name; and that I am a citizen of this State. So help me God.'" Such

enactments as these, which deal with peddling as a "thing apart" from business in its ordinary sense, considered in connection with the other statutes which we have referred to or recited above, strengthen us in the conclusion announced, that the decision of our court dealing with the right of a Confederate soldier, exempted from the necessity of obtaining a license, to conduct a business and employ therein the necessary instrumentalities and agents, is not controlling upon the question as to whether the soldier thus exempted may send out another person as a peddler, and whether the person thus sent out and who does the actual peddling and hawking of the wares may claim the cover of the exemption. For these reasons we are of the opinion that the case of *Hartfield* v. *City of Columbus,* which deals with conducting business in its general sense and not with "peddling," is clearly distinguishable from that of *Smith* v. *Whiddon,* and that the latter should be held to be controlling in the present case.

> *Judgment affirmed. All the Justices concur.*